UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEGACY CAPITAL 26 LLC,

                Plaintiff,

v.                                          6:24-CV-6349 CJS

                                                  DECISION and ORDER

VALLEY UNIQUE ELECTRIC INC;
SELLING & WORTHINGTON DEVELOPMENT
GROUP LLC; SVW SUNCORP; VUE SOLAR
CLEANING SOLUTIONS LLC; SSBV
CONSTRUCTION AND DEVELOPMENT;
HOLGER ARTHUR SELLING and MARK
WILLIAM WORTHINGTON,

                Defendants.
_____

INTRODUCTION

This is a diversity action for breach of contract. Now before the Court is Plaintiff's unopposed motion for default judgment pursuant to Fed. R. Civ. P. 55(b). The application is granted.

BACKGROUND

Unless otherwise indicated, the following facts are taken from the Amended Complaint, ECF No. 31.[1] On August 1, 2023, Plaintiff and the defendant businesses ("Defendants") entered into a Future Receivables Sale and Purchase Agreement (the "Purchase Agreement") pursuant to which Plaintiff purchased 35% of Defendants' total

---

[1] As discussed further below, since Defendants are in default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except as to damages. *See City of New York v. Mickalis Pawn Shop, L.L.C.*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").

future receipts, up to the sum of $4,340,000.00, in exchange for a discounted upfront purchase price of $3,100,000.00.  In connection with the Purchase Agreement, the Guarantors, the defendant businesses' owners, Holger Arthur Selling and Mark William Worthington, executed a Personal Guaranty of Performance (the "Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally guaranteed to Plaintiff the prompt and complete performance of all obligations of the Defendant businesses under the Purchase Agreement.

Under the Purchase Agreement, Defendants agreed to make payment by a daily remittance amount ($36,166.00) that was purportedly a good faith estimate of the specified percentage of the businesses' average daily receipts.  Defendants agreed, among other things, to deposit all such remittances into one designated account; not to revoke Plaintiff's authorization to debit the daily remittance amount from the designated account; and not to interfere with Plaintiff's collection of the daily remittance amount.

The Purchase Agreement included a mandatory reconciliation provision pursuant to which, upon Defendants' request and the provision of certain necessary information, the daily remittance amount could be modified to more closely reflect the specified percentage of the businesses' actual daily receipts.

The Purchase Agreement has a Connecticut forum selection clause and choice-of-law provision.

On or about August 1, 2023, Plaintiff funded the purchase price under the Purchase Agreement, less applicable and disclosed upfront fees.  In that regard, it appears that the actual payment to Defendants was $803,000.00.  That was because, from the face purchase value of $3,100,000.00, the parties agreed that Plaintiff would

deduct sums, including an Origination/Underwriting Fee of $125,000.00, and a prior balance owed by Defendants, in the amount of $2,172,000.00, remaining from a similar agreement executed by the parties several months earlier, ECF NO. 31-1 at pp. 2, 9, 16.

Defendants then made four daily payments under the agreement.  However, from August 8, 2023, through August 31, 2023, Defendants' daily remittances were returned for insufficient funds.  Defendants, though, never requested that, pursuant to Section X of the Purchase Agreement, Plaintiff reconcile the daily remittance amount to more closely reflect the specified percentage of Defendants' actual daily receipts.  In other words, Defendants never asked to utilize the agreement's reconciliation provision to have its estimated daily remittance reduced to reflect lower-than-anticipated receipts.

On or about August 31, 2023, Defendants placed a "stop payment" on Plaintiff's ACH debits from Defendants' designated bank account (resulting in the ACH Return Code "R08" (stop payment)).  Plaintiff contends that this action was a breach of Section XIX.a.viii of the Purchase Agreement, since it prevented Plaintiff's collection of the daily remittance or the specified percentage of Defendants' daily receipts.

Subsequently, rather than immediately declaring a default and enforcing its remedies, Plaintiff voluntarily accepted remittances that were significantly less than the contractually estimated amount even though, again, Defendants never requested a reconciliation pursuant to Section X of the Purchase Agreement.

Between September 14, 2023, and January 2, 2024, Defendants made various payments to Plaintiff.  After January 2, 2024, however, Defendants advised Plaintiff that they had no intention of resuming performance under the Purchase Agreement, or even

3

of continuing to make the *ad hoc* remittances that, since on or about September 14, 2023, Plaintiff had accepted in lieu of declaring a default. At that point, the outstanding balance due to Plaintiff was $3,040,418.00. ECF No. 31-2 at p. 3.

Plaintiff maintains that Defendants were therefore in default under the Purchase Agreement because they had revoked the authorization for Plaintiff to debit the daily remittances from the designated bank account by placing a "stop payment" on Plaintiff's attempted debits and were refusing to remit the specified percentage (or any percentage) their receipts, even though they were continuing to do business and generate revenue. Plaintiff also contends that Defendants were in default under Section XIXa.x of the Purchase Agreement by entering into further revenue-based financing agreements after the Purchase Agreement and further encumbering Plaintiff's collateral.

Plaintiff further contends that the Defendant Guarantors breached the Guaranty by failing to ensure that the defendant businesses performed their obligations to Plaintiff under the Purchase Agreement.

On March 25, 2024, the Parties, along with non-party Dynasty Capital 26 LLC ("Dynasty"), entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement").[2] Under the Settlement Agreement, Plaintiff and Dynasty agreed to accept $2,800,000 (the "Settlement Amount") in full satisfaction of their respective claims against Defendants. Defendants agreed to pay the Settlement Amount by: (1) wiring $100,000 to Plaintiff and Dynasty on or before March 26, 2024, and (2) wiring $2,700,000 to Plaintiff and Dynasty on or before April 12, 2024.

---

[2] In addition to addressing the breach of the subject Purchase Agreement, the Settlement Agreement was also intended to resolve Defendants' alleged breaches of two separate revenue purchase agreements with Dynasty.

According to the Settlement Agreement, if Defendants failed to timely make a settlement payment, Plaintiff and Dynasty agreed to give Defendants notice of the default by email at hogis@vallegunique.com.  If Defendants thereafter failed to cure their default within five (5) calendar days, the parties agreed that the Settlement Agreement would be null and void, and that Plaintiff and Dynasty could proceed against Defendants for the outstanding balance (including costs and fees) on the purchased amount of receipts under their respective agreements (*i.e.*, the Purchase Agreement and the two Dynasty agreements), less payments made under the Settlement Agreement, plus legal fees and interest at the rate of 9% per annum from January 2, 2024. ECF No. 31-3 at p. 3.

The Settlement Agreement has a New York forum selection clause and a "State of New York or Connecticut" choice-of-law provision. ECF No. 31-3 at pp. 3, 5.

After entering into the Settlement Agreement, Defendants made their first payment of $100,000.00, but failed to make their $2,700,000 payment on or before April 12, 2024.  On April 17, 2024, Plaintiff's representative sent an email to Defendants at hogis@valleyunique.com providing notice that Defendants were in default of the Settlement Agreement and that Plaintiff would pursue legal action if the default was not cured.  Defendants failed to cure their default within five (5) days (or at any time since).

Plaintiffs therefore maintain that they are entitled to recover $2,940,418 (the outstanding balance of $3,040,418 on the purchased amount of receipts under the Purchase Agreement, less Defendants' $100,000 payment under the Settlement Agreement), plus pre-judgment interest at the rate of 9% per annum from January 2, 2024. See, Memorandum of Law in Support of Motion for Default Judgment, ECF No.

5

71 at p. 26 ("Plaintiff respectfully submits that this Court should enter a default judgment against Defendants, jointly and severally, in the amount of $2,940.418 plus pre-judgment interest.").

PROCEDURAL HISTORY[3]

On May 2, 2024, Plaintiff filed suit against Defendants in New York State Supreme Court, Monroe County.  On May 31, 2024, Defendants removed the action to this Court on the basis of diversity jurisdiction.  On September 3, 2024, Plaintiff filed its Amended Complaint against Defendants asserting a cause of action for breach of the Settlement Agreement and alternative causes of action for breach of the Purchase Agreement and Guaranty.

On September 17, 2024, Defendants filed their Answer to the Amended Complaint, generally asserting that the Purchase Agreement and Guaranty are unenforceable based on the affirmative defenses of Fraud, Unconscionability, and Usury, as well as several other defenses based on California law.  In this regard, the Answer makes various assertions contradicting the factual premises contained in the Purchase Agreement.  The Answer asserts, for example, that one of the defendant businesses, Valley Unique Electric, did not execute the Purchase Agreement; that the Purchase Agreement did not involve the purchase of Merchant's future receivables, but, rather, was a "usurious and unconscionable loan"; and that the daily-payment amount of $36,166.00 was not a good-faith approximation of Merchant's daily receipts. ECF No. 35.  The Answer asserts that the Settlement Agreement is similarly unenforceable, since "it did not cure the usurious aspects of the Purchase Agreement." ECF No. 35 at

---

[3] Unless otherwise noted, the following procedural history is taken from Plaintiffs' Memorandum of Law, ECF No. 71.

6

pp. 4-5.  The Answer also asserts counterclaims for breach of contract and breach of the guaranty.

On April 15, 2025, counsel for Defendants moved to withdraw from the action. On April 16, 2025, the Honorable Mark W. Pedersen, United States Magistrate Judge, entered an order granting the motion to withdraw.  In a text order accompanying its order granting the motion to withdraw, Magistrate Judge Pedersen noted that Defendants could not proceed *pro se,* and set a deadline of May 16, 2025, for Defendants to retain new counsel. Judge Pedersen expressly warned that "[i]f new counsel does not appear, the [Court] will direct entry of default pursuant to Fed. R. Civ. P. 55(a) and Loc. R. Civ. P. 55(a)[.]"

On May 17, 2025, Judge Pedersen issued a Text Order noting that Defendants had failed to retain counsel by the court-ordered deadline, and instructing the Clerk to enter default against all Defendants pursuant to Fed. R. Civ. P. 55(a).  On May 19, 2025, the Clerk entered default against Defendants.

On October 29, 2025, Plaintiff filed the subject motion for entry of a default judgment against Defendants, jointly and severally, in the amount of $2,940,418.00, representing the outstanding balance of $3,040,418.00 on the purchased mount of Defendants' receipts less the $100,000 Defendants paid pursuant to the Settlement Agreement. Fuzailov Decl. ¶ 27, Ex. C § 5.2.  Plaintiff also seeks pre-judgment interest calculated at 9% per annum from January 2, 2024. *Id*.

In support of the motion, Plaintiff has filed a Memorandum of Law purporting to explain why Plaintiff is entitled to judgment on the Settlement Agreement, and why the affirmative defenses asserted in Defendants' Answer to the Amended Complaint lack

7

merit. ECF No. 71. Plaintiff also submitted an affidavit in support of its request for monetary damages. ECF No. 72.

On October 31, 2025, the undersigned issued a Text Order, ECF No. 74, which it mailed to Defendants, stating, in pertinent part: "Plaintiff having filed a motion [70] on October 29, 2025, seeking default judgment against all Defendants, it is hereby ORDERED that briefing shall be as provided for in Rule 7(b)(2)(B) of the Local Rules of Civil Procedure ("The opposing party shall have fourteen (14) days after service of the motion to file and serve responding papers, and the moving party shall have seven (7) days after service of the responding papers to file and serve reply papers."). However, despite such notice, Defendants have not responded to Plaintiff's motion.

## DISCUSSION

<u>Jurisdiction</u>

As a preliminary matter, the Court finds that it has diversity subject matter jurisdiction over this matter, since there appears to be no legitimate dispute that there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.[4] Indeed, Defendants removed the action to this Court from New York State Supreme Court, Monroe County, on the basis of diversity jurisdiction.

As for personal jurisdiction, the Amended Complaint maintains that Defendants are subject to personal jurisdiction in New York State. *See*, Amended Complaint at ¶ 10 ("The Court has personal jurisdiction over Defendants because Defendants have

---

[4] The Answer to the Amended Complaint "denied" Plaintiff's allegation of subject matter jurisdiction on the ground that it constituted a legal conclusion to which no response was required, but offered no contrary facts to dispute the allegation.

minimum contacts with New York, this case arises out of those contacts, and Defendants purposefully availed themselves of the privilege of conducting business in New York."). Defendants' Answer "denied" that assertion, but only on the ground that the Complaint's assertion on that point "constituted a legal conclusion to which no response was required." ECF No. 35 at p. 2. Defendants never sought to dismiss the action for lack of personal jurisdiction. Nevertheless, the Court finds, upon consideration of the relevant factors,[5] that it has personal jurisdiction over Defendants.

In any event, by abandoning the defense of the action, Defendants have waived any potential objection to personal jurisdiction. *See, City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 135 (2d Cir. 2011) ("[*e360 Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir.2007)] is persuasive authority for the proposition that a defendant forfeits its jurisdictional defense if it appears before a district court to press that defense but then willfully withdraws from the litigation and defaults, even after being warned of the consequences of doing so. We, like the Seventh Circuit, "see no reason to require the district court to raise *sua sponte*" the defense of lack of personal jurisdiction on behalf of parties who have "elect[ed] not to pursue those defenses for [themselves]." *Id*. at 599.") (footnote omitted).

---

[5] *See, e.g., Rob v. Von Horn*, No. 19-CV-3822 (AMD) (JAM), 2025 WL 3072789, at *8 (E.D.N.Y. Nov. 4, 2025) ("The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.") (citations omitted).

The Motion for Default Judgment

Plaintiff has moved for default judgment pursuant to Fed. R. Civ. P. 55(b), and the standard for such a motion is well settled:

> "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 114 (E.D.N.Y. 2025) (explaining, "the Clerk of Court enters a party's default after an affidavit or other evidence shows that the 'party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'" (citing Fed. R. Civ. P. 55(a))). At the second step, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505 (citing Fed. R. Civ. P. 55(b)); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011).
>
> The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *Gomez v. W. Shore Inn Rest., Inc.*, No. 22-CV-277 (EK) (CLP), 2023 WL 5337864, at *3 (E.D.N.Y. June 30, 2023), *report and recommendation adopted*, 2023 WL 5334415 (E.D.N.Y. Aug. 18, 2023) (citation omitted)). A defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial, or by failing to comply with discovery orders." *Id*. (citation modified) (first quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); and then citing *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013)); *see also SEC v. Simeon*, No. 21-CV-5266 (ARR) (LGD), 2026 WL 73973, at *3 (E.D.N.Y. Jan. 9, 2026) (quoting the same language) (first quoting *Mickalis Pawn Shop*, 645 F.3d at 129; and then citing *Au Bon Pain*, 653 F.2d at 65)); *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 (NG) (MDG), 2014 WL 2594340, at *2 (E.D.N.Y. June 10, 2014) ("The phrase 'otherwise defend' has been interpreted to encompass situations including one in which a defendant 'fail[ed] to appear for a deposition, dismiss[ed his] counsel, [gave] vague and unresponsive answers to interrogatories, and fail[ed] to appear for trial.' The entry of default judgment was also held to be appropriate against a defendant who twice

10

failed to respond, as directed, to plaintiff's pretrial submission.'" (first quoting *Au Bon Pain*, 653 F.2d at 65; and then citing *Cotton v. Slone*, 4 F.3d 176, 178-79 (2d Cir. 1993))).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sep. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), report and recommendation adopted, 2015 WL 5561180 (E.D.N.Y. Sep. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sep. 29, 2023 (quoting *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)), *report and recommendation adopted*, Text Order dated Nov. 30, 2023. A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (citation modified). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (citation modified), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept 17, 2010).

In deciding whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024)

11

> (quoting *Enron Oil*, 10 F.3d at 96); *see also Trico Tarek Factor v. Jetax Inc.*, Nos. 24-CV-3731 (JMA) (ST), 24-CV-2409 (ST), 2025 WL 2625376, at *29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether granting a default judgment is warranted in the first instance." (citing *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54-61 (E.D.N.Y. 2022)), *report and recommendation adopted*, No. 24-CV-3731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sep. 30, 2025); *Lakers for Garmets & Made Clothes v. Jetax Inc.*, No. 24-CV-2226 (LDH) (ST), 2025 WL 3461453, at *10 (E.D.N.Y. Sep. 17, 2025) (explaining *Enron* factors). "Willfulness 'is the most significant factor' but is not dispositive." *Henry*, 108 F.4th at 52 (citing *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)); *see also Grp. One*, 625 F. Supp. 3d at 55 ("However, in neither case did the court find default judgment appropriate based solely on willfulness." (citations omitted)).

*Weber Capital LLC v Racaniello*, No. 24-CV-6258, 2026 WL 303495, at *6–7 (E.D.N.Y. Feb. 5, 2026) (Involving a post-answer motion for default judgment).

Applying the foregoing factors in the instant case, the Court finds, first, that Defendants are clearly in default, and that the default is willful. As discussed earlier, when Magistrate Judge Pedersen permitted Defendants' counsel to withdraw, he expressly warned Defendants that he would direct entry of default unless new counsel appeared by May 16, 2025. However, Defendants never responded to that order, and subsequently have never made any attempt to defend this action. Nor did Defendants respond after the undersigned gave them written notice of the subject motion and an opportunity to respond. Accordingly, Defendants are in willfully in default by having failed to "otherwise defend" the action. Fed. R. Civ. P. 55(a).

Additionally, the Court finds that Plaintiff clearly would be prejudiced if the Court denied the motion for default judgment,[6] since Plaintiff would be unable to pursue its legal remedies against Defendants in this action. *See, e.g., Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) ("As to prejudice, the district court must consider the effect of the delay caused by the defendant's default, *such as thwarting plaintiff's recovery or remedy*, resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion.") (emphasis added; citations and internal quotation marks omitted); *see also, Williams v. Harry's Nurses Registry, Inc.*, No. 23-CV-6661 (PKC) (TAM), 2025 WL 2481745, at *7 (E.D.N.Y. Aug. 28, 2025) ("A plaintiff is considered prejudiced if they have no additional steps available to secure relief in this Court.  Defendants' failure to obtain new counsel precludes the availability of "additional steps" to "secure relief" and constitutes sufficient prejudice.") (citations and internal quotation marks omitted).

Furthermore, the Court find finds that Defendants have not shown a meritorious defense to Plaintiff's claim for breach of contract.  In this regard,

> the party claiming such a defense must present some evidence beyond conclusory denials to support his defense.  The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (citations omitted).

---

[6] *See, Glob. Exp. Mktg. Co. v. Abdelrahman A. Abbar Trading Co.*, No. 20CV03504JPCSN, 2023 WL 425042, at *2 (S.D.N.Y. Jan. 9, 2023) ("[T]o determine if entering default judgment is an appropriate exercise of its discretion, the Court may consider . . . the degree of prejudice suffered by the plaintiff if the Court denied its motion.") (citations omitted), *report and recommendation adopted*, No. 20CIV3504JPCSN, 2023 WL 2632230 (S.D.N.Y. Mar. 24, 2023).

As a preliminary matter, it is questionable whether the Court should even consider Defendants' Answer to the Amended Complaint when considering whether a meritorious defense exists, since other courts in this Circuit have held that under the circumstances presented here, the defaulting defendant's answer should be stricken. *See, e.g., Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Triple H Concrete Corp.*, No. 15CIV6687ARRVMS, 2018 WL 1178036, at *5 (E.D.N.Y. Feb. 16, 2018) ("[A]lthough Defendant filed an Answer to the Amended Complaint, this Court respectfully recommends that the Answer filed by Defendant be stricken *sua sponte* in light of Defendant's failure to oppose Plaintiffs' motion for default judgment and Defendant's failure to introduce any evidence that would constitute a meritorious defense.") (collecting cases), report and recommendation adopted, No. 15-CV-6687 (ARR), 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018); *see also, Seggos v. Datre*, No.17CV2684MKBLB, 2023 WL 4230461, at *2 (E.D.N.Y. June 28, 2023) (entering default and striking defendants' answers and crossclaims); *Bratta v. Tramp*, No. 08CV4073JFBETB, 2009 WL 10708936, at *2 (E.D.N.Y. Nov. 30, 2009) ("Although the defendants filed answers to the plaintiff's complaint, because they have since failed to "otherwise defend" the action, plaintiff's motion to strike defendants' answers and enter default is granted in Its entirety.").

However, Plaintiff never asked the Court to strike Defendants' Answer, and neither did the Court expressly warn Defendants that it might do so when it cautioned them about what could happen if they failed to retain new counsel. Consequently, the Court declines to strike Defendants' Answer and defenses *sua sponte*.

Nevertheless, it is evident that the defenses asserted in the Answer are only cursorily asserted, and that Defendants have abandoned them in any event. *See, Seggos v. Datre*, No. 17 CV 2684 (MKB)(LB), 2023 WL 2969955, at *3 (E.D.N.Y. Mar. 22, 2023) ("Having previously appeared, the nonresponsive defendants are unquestionably aware of this proceeding. Based on defendants' radio silence, the only reasonable inference is that defendants willfully abandoned their defense of this case.") (collecting cases, footnote, citations and internal quotation marks omitted), report and recommendation adopted, No. 17CV2684MKBLB, 2023 WL 4230461 (E.D.N.Y. June 28, 2023); *see also, Doe v. Olive Leaves, Inc.*, No. 18-CV-5734 (HG) (TAM), 2024 WL 3048373, at *4 (E.D.N.Y. Feb. 16, 2024) ("Defendants' denials and defenses are conclusory and boilerplate, unsupported by any facts or evidence, and they have been abandoned given Defendants' failure to continue participating in this lawsuit. The Court therefore weighs this factor in favor of default.") (citation omitted).

Indeed, even assuming *arguendo* that Defendants have technically raised a potentially meritorious defense merely by listing various affirmative defenses in their Answer, the Court nevertheless finds that Defendants' subsequent, obvious abandonment of the defense of this action, including any affirmative defenses, results in this factor weighing in favor of granting default judgment. *See, e.g., James v. Arango*, No. CV 05-2593 TCP AKT, 2011 WL 1594832, at *10 (E.D.N.Y. Mar. 28, 2011) ("Notwithstanding the fact that DFA has raised a meritorious defense, this Court finds that the factors set forth in *Mason Tenders* weigh in favor of granting Plaintiff's motion for a default judgment. The fact that Defendants have not submitted briefs in opposition to Plaintiff's motion, and did not submit briefs in opposition to Plaintiff's previous

(withdrawn) motion, further supports that conclusion."), report and recommendation adopted, No. 05-CV-2593 TCP, 2011 WL 1627099 (E.D.N.Y. Apr. 27, 2011).

In sum, the Court finds, upon consideration of the relevant factors that entry of default judgment would be appropriate in this case, assuming that Plaintiff has otherwise shown its entitlement to judgment. In this regard, Plaintiff contends that it is primarily seeking judgment on the first cause of action in the Amended Complaint, for breach of the Settlement Agreement. *See, e.g.*, Memorandum of Law in Support of Default Judgment, ECF No. 71 at p. 17 ("Plaintiff respectfully submits that it has established Defendan's' liability for breach of the Settlement Agreement as a matter of law."); *see also, id*. at p. 20 (reiterating that Plaintiff is seeking judgment on the Settlement Agreement).

However, the Court finds that Plaintiff is not entitled to default judgment for breach of the Settlement Agreement, since, by its own terms, that agreement became "null and void" upon Defendants' failure to make the second payment thereunder, and their subsequent failure to cure the default within five days. *See*, Settlement Agreement, ECF No. 31-3 at p. 3 ("In the event the default is not cure within five (5) calendar days from the date Buyer sends notice of default, this Agreement , and the releases contained herein in favor of the Seller, *shall become null and void* and Buyer may proceed against Seller in the Supreme Court of the State of New York, for the amount of $3,660,418.00[7] (Purchased Amount with all applicable costs and fees pursuant to the Merchant Agreement), less payments made hereunder, if any, plus legal fees at the rate

---

[7] This amount represents amounts that were owed by Defendants to both Plaintiff and Dynasty. The amount owed by Plaintiff at that point was only $3,040,418.00.

16

of 20.00% ("Total due" plus interest at 9% from 01/02/2024, plus all additional costs and disbursements allowed by statute upon entry of Judgment).").

However, the Court finds that the well-pleaded allegations in the Amended Complaint establish that Plaintiff is entitled to judgment as to liability on the Second and Third Causes of Action, pled in the alternative, for breach of the Purchase Agreement and breach of the Personal Guaranty, respectively.  In particular, the evidence of record indicates that Defendants failed to make payment to Plaintiff of 35% of the Defendant companies' future receipts up to the purchased amount $4,340,000.00.  Rather, Defendants stopped making any payments to Plaintiff after paying a total of $1,399,582.00 toward that amount, including the amount paid in connection with the Settlement Agreement.

<u>Damages</u>

"Before granting a damages award on a default judgment, the district court must ensure that the plaintiff has established the amount of damages to a "reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999)." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014).  In that regard,

> [e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d at 155 (citations omitted).  Such determination "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be

17

determined under this rule." *Id*. Additionally, "[Fed. R. Civ. P.] 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (citations omitted).

The Purchase Agreement and Guaranty are governed by Connecticut choice-of-law provisions, and

> "[Connecticut's] case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims. The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." (Internal quotation marks omitted.) *Ambrogio v. Beaver Road Associates*, 267 Conn. 148, 155, 836 A.2d 1183 (2003).

*Dunleavey v. Paris Ceramics USA, Inc.*, No. CV020395709S, 2005 WL 1094424, at *1 (Conn. Super. Ct. Apr. 20, 2005), *aff'd*, 97 Conn. App. 579, 905 A.2d 703 (2006).

Here, Plaintiff has provided proof, in the form of a sworn affidavit, ECF No. 72, and supporting exhibits, that Defendants, being contractually obligated by the Purchase Agreement and Guaranty to pay Plaintiff a total of $4,340,000.00, made total payments under the Purchase Agreement in the amount of only $1,399,582.00, leaving an unpaid balance of $2,940,418.00. Accordingly, the Court finds that Plaintiff is entitled to compensatory contractual damages in the amount of $2,940,418.00.

Plaintiff also seeks pre-judgment interest on that amount at 9%, beginning on January 2, 2024. Plaintiff has shown that the Purchase Agreement provides for Defendants, in the event of a default, to pay interest on the amount owed at a rate of

nine percent from the date of default,[8] which the parties agreed was January 2, 2024. ECF No. 31-3 at p. 3.  Such an agreement is enforceable under the Law of Connecticut law, in lieu of statutory interest. *See, Garzarelli Food Specialties, Inc. v. Brice*, No. FSTCV135014061S, 2013 WL 4046683, at *5 (Conn. Super. Ct. July 23, 2013) ("The law in Connecticut appears to be that statutory interest does not apply if there is a contractual provision relating to interest, whether prejudgment or postjudgment. *Little v. United National Investors Corp.*, 160 Conn. 534, 280 A.2d 890 (1971)."). Consequently, the Court awards Plaintiff pre-judgment interest on the amount of $2,940,418.00 at the contractually-specified rate of 9%, to run from January 2, 2024, through the date of judgment.[9]

## CONCLUSION

Plaintiff's Motion for Default Judgment (ECF No. 70) is granted, as follows: The Clerk is directed to enter judgment for Plaintiff in the amount of $2,940,418.00, plus pre-judgment interest on that amount at the rate of 9% per annum from January 2, 2024, until the date of entry of judgment.  Post-judgment interest shall accrue as per 28 U.S.C. § 1961 to the date of payment.  The Clerk is further directed to close this action.

SO ORDERED.

Dated: February 13, 2026
Rochester, New York

Charles J. Siragusa
United States District Judge

---

[8] See, Purchase Agreement § XIX(b) ("The entire sum shall bear simple interest from the Default Date until it is paid in full, at a rate of Nine Percent (9%) per annum, with interest accruing daily.").

[9] The Amended Complaint contains a demand for attorney fees.  However, Plaintiff's Motion for Default Judgment does not contain a request for attorney fees, and the Court consequently determines that any claim for such fees has been waived and/or abandoned.

19